FIFTH STREET PIER CORPORATION, PLAINTIFF-APPELLANT AND AS RESPONDENT-APPELLANT, v. CITY OF HOBOKEN, A MUNICIPAL CORPORATION, RESPONDENT-RESPONDENT AND AS PLAINTIFF-RESPONDENT, AND DIVISION OF TAX APPEALS, DEPARTMENT OF THE TREASURY, RESPONDENT.

Argued September 24, 1956—Decided October 22, 1956.

Mr. *Raymond J. Lamb* argued the cause for the plaintiff-appellant (*Messrs. Emory, Langan, Lamb & Blake,* attorneys).

Mr. *David D. Furman,* Deputy Attorney-General, argued the cause for the respondent Division of Tax Appeals, Department of the Treasury (*Mr. Grover C. Richman,* Jr., Attorney-General of New Jersey, attorney).

Mr. *Herbert H. Fine* argued the cause for the respondent City of Hoboken.

The opinion of the court was delivered by

BURLING, J. ■ This appeal stems from 26 judgments entered by the Division of Tax Appeals. They concern assessments levied on property of the Fifth Street Pier Corporation (hereinafter termed plaintiff) during the years 1948-

1953, inclusive, by the defendant City of Hoboken. Judicial consideration has been given by the Superior Court, Appellate Division, *R. R.* 4:88–8, which affirmed the judgments. *Fifth Street Pier Corporation v. City of Hoboken,* 40 *N. J. Super.* 12 (*App. Div.* 1956). Plaintiff appealed to that court on grounds of error in the property valuations and also claimed a denial of procedural due process. Plaintiff directs our attention only to the latter issue which comes here as a matter of right. *R. R.* 1:2–1(*a*). A substantial constitutional question is presented. *Butler Oak Tavern* v. *Division of Alcoholic Beverage Control, etc.,* 20 *N. J.* 373 (1956).

It is necessary to trace the protracted agency adjudication with some particularity. Appeals from the property assessments were taken to the Hudson County Board of Taxation and thence to the Division of Tax Appeals. Hearings were conducted by the Division through its panel procedure on 19 different days between January and October 1953. The panel consisted of two of the Division members who sat throughout the proceedings. A stenographic record was made and promptly transcribed. It eventually attained some 2,500 typewritten pages. (The transcript copies were made available for the use of the Division members and the parties.) Plaintiff filed briefs with the panel members and the Secretary of the Division in May 1954. On March 15, 1955 the panel distributed a detailed report containing findings of fact and recommendations to the other members of the Division. Plaintiff did not request a copy of the report nor opportunity to file exceptions. The parties were not notified of the report. On April 7 the entire Division met; the panel report was "officially" filed and upon motion was adopted as the decision of the Division. On April 29 the 26 judgments were entered by the Division, reciting *inter alia*:

"After hearing evidence produced on the part of said complainant and the said respondent and the argument of * * *, Attorney for the Complainant, and * * *, Attorney for the respondent, and after considering the same, it is * * *."

A copy of the panel report was thereafter forwarded to plaintiff.

Basically, there are two questions involved on this appeal:

1. Was plaintiff deprived of its property without due process of law because it was not notified of the panel report and expressly allowed to file exceptions thereto prior to the decision of the Division of Tax Appeals?

2. Is *R. S.* 54:2–18 (which provides for the panel method of hearing appeals) violative of the due process clauses of the Federal and State Constitutions?

We deal first with the statutory question. *R. S.* 54:2–18 provides:

"The Division of Tax Appeals in the State Department of Taxation and Finance may, as occasion shall require, by order, refer to two or more of its members, at least one of whom shall be an attorney-at-law, the duty of taking testimony in a matter pending before it, and to report on such matter and the testimony so taken, to the division, *but no determination shall be made therein except by the division.* Said reports shall be in writing and signed by the members, and shall include, in substance, the facts and particulars of the testimony so taken, which written reports shall be public records and open to the inspection of the public. *Stenographic notes shall be made of all testimony so taken, but the members of the board [sic] shall be qualified to make their determination after receiving the report of the members hearing the testimony, and without the necessity that the stenographic notes so taken shall have been reduced to writing;* provided, however, that the testimony shall be reduced to writing at the request of any member of the division required to make a determination in any such matter." (Emphasis supplied.)

Clearly the statute contemplates that the Division (which has the sole power of decision) may reach a conclusion solely upon the basis of the panel report. Were there any fragment of doubt reference need only be made to the statement appended to *L.* 1941, *c.* 143 (amending *R. S.* 54:2–18):

"The purpose of this bill is to relieve the board (sic) of the necessity of ordering testimony reduced to writing in every case before it, as a condition of the legality of judgments in cases heard by one or more members, but less than the entire board. Such necessity has been adjudicated by the courts under the sections in

.question. The cost of such testimony would, of itself, exceed the present full annual budget of the board, since upwards of 20,000 appeals are filed annually with the board."

The theme of plaintiff's argument is that the Legislature may not provide, consistently with procedural due process, that the members of the Division may decide a matter on anything less than the record made at the hearing. The frequently quoted expression "The one who decides must hear" of the First Morgan case (*Morgan v. United States*, 298 *U. S.* 468, 56 *S. Ct.* 906, 80 *L. Ed.* 1288 (1936)) is said to require something more than personal mastery of a panel report by the powers of decision. The extent of decisional comprehension contended for is revealed in plaintiff's anticipation that "every member of the Division who participated in the decision would be fully familiar with the testimony."

We might, of course, pass over the constitutional issue in view of the actual transcription of the stenographic notes by the Division and whatever presumptive strength can be distilled from the judgment recitals. *United States v. Morgan*, 313 *U. S.* 409, 61 *S. Ct.* 999, 85 *L. Ed.* 1429 (1941) (Morgan IV). In this instance, however, it is proper to steer clear of these hurdles. We have no desire to probe "mental processes," *cf. State ex rel. Madison Airport Co. v. Wrabetz*, 231 *Wis.* 147, 285 *N. W.* 504 (*Sup. Ct.* 1939), nor to reach an abrupt conclusion upon an inherently weak recital that the deciders *heard* the evidence and counsel's argument. Compare *Hohorst v. Marion Bus Transp. Co., Inc.*, 5 *N. J. Super.* 279, 282 (*App. Div.* 1949) and see *Schwartz, "Institutional Administrative Decisions and the Morgan Cases: A Re-examination,"* 4 *Journal of Public Law* 49, 60–68 (1955). It is probably true that the Division members (other than the panel members) were not fully familiar with the entire 2,500 pages of typewritten testimony. We proceed upon that premise.

The decisional power under *R. S.* 54:2–18 is with the Division and not the panel, *In re Erie Railroad System*, 19 *N. J.* 110, 124 (1955), and the statute contemplates that the administrative body charged with making the de-

cision need not personally preside at the hearing. Compare *R. S.* 54:2–16. "The system which has evolved owes its existence to practical exigencies rather than to any theory of jurisprudence. Faced with a necessity of deciding a staggering number of cases annually, it has been simply a matter of necessity for * * * agencies to delegate * *. *, so far as possible, the tasks of hearing and weighing the evidence." *Cooper, Administrative Agencies and the Courts, p.* 211 (1951). The practice, of course, is not inimical to the judicial process. *Raskin v. Town of Morristown,* 21 *N. J.* 180, 182–184 (1956); *In re Port Murray Dairy Co.,* 6 *N. J. Super.* 285, 295 (*App. Div.* 1950); *Gellhorn, Administrative Law* (*2d ed.* 1947), *pp.* 689–691. This distinguishes many of the cases relied upon by plaintiff, such as *City of Asbury Park v. Dept. of Civil Service,* 17 *N. J.* 419 (1955); *McAlpine v. Garfield Water Commission,* 135 *N. J. L.* 497 (*E. & A.* 1947); *Redcay v. State Board of Education,* 128 *N. J. L.* 281 (*Sup. Ct.* 1942). As pointed out by Mr. Justice Brennan in *City of Asbury Park* (discussing a statute where those presiding at the hearing also had full power of decision):

"* * * this statute is not like some under which one or more of the members of a commission or board merely take the testimony, and the determination is made by the full body upon the report of those members." 17 *N. J.,* at *page* 422.

And see *Atlantic City Trans. Co. v. Director, Div. of Taxation,* 12 *N. J.* 130, 140 (1953).

Where the panel procedure is employed those who preside at the hearing are required to file a written report containing the "facts and particulars of the testimony," *R. S.* 54:2–18, which has been interpreted to permit recommended factual findings and decision which the Division may adopt as its own. *In re Erie Railroad System, supra,* 19 *N. J.,* at *page* 123–126. We assumed in the latter case that the Division members had reviewed the testimonial record, not only because of the language expressed in the judgment (" 'having considered the evidence submitted by the parties' ") but also

because no contrary contention had been made. Here we must answer the question not raised in Erie, that is, whether the Division may decide solely upon resort to the panel report?

We think it can, at least where proper preliminary access to the powers of decision is afforded.

Our conclusion seems to have been assumed (although not precisely in issue and hence not decided) in *Jersey City v. Hudson County Board of Taxation,* 130 *N. J. L.* 309 (*Sup. Ct.* 1943), where a member of the county tax board conducted the hearing and orally reported to the board which rendered the decision. *R. S.* 54:3–20.1. The court's reversal of the agency action turned upon the member's failure to file a comprehensive report with the board—a matter necessitated by the statute and "ordinary requirements of 'fair play.'" The remarks of Justice Case (130 *N. J. L.,* at *page* 312) take on particular significance because a stenographic recording was not taken at the hearing:

"Competent proof that a comprehensive report of the pertinent testimony was placed before a statutory tribunal sitting in a *quasi* judicial capacity is not only the requirement of the applicable statute; it is an incident to the ordinary requirements of 'fair play.'"

It is unnecessary to resolve the issue in this case upon that observation, however.

A literal interpretation of the phrase "he who decides must hear" was not intended by the United States Supreme Court when it coined the expression. Chief Justice Hughes pointed out in the First Morgan case that evidence could be taken (*i. e.,* "heard") by some one other than the person or body charged with decision. And although the decisional power "must consider and appraise the evidence," something less than mastery of the complete record was intended to be within the compass of a fair hearing, because the court recognized that the evidence might be "sifted and analyzed" by competent subordinates. *Morgan v. United States, supra,* 298 *U. S.,* at *pages* 480–482, 56 *S. Ct.,* at *page* 912, 80 *L. Ed.,* at *page* 1295. If subordinates with no power of decision may

prune the record and summarize the crucial factual contentions for their deciding superior, we are confident that due process is satisfied where two members of the decisional body itself, sitting as a panel, perform a similar function and the judgment is based wholly thereon. The practice has met California's concept of due process where the person presiding at the hearing had *no* portion of the decisional power; *California Shipbuilding Corp. v. Industrial Accident Comm.,* 27 *Cal.* 2d 536, 165 *P.* 2d 669 (*Sup. Ct.* 1946); *Pacific Indemnity Co. v. Industrial Accident Comm.,* 28 *Cal.* 2d 329, 170 *P.* 2d 18 (*Sup. Ct.* 1946); *Hohreiter v. Garrison,* 81 *Cal. App.* 2d 384, 184 *P.* 2d 323 (*D. Ct. App.* 1947), although we are not to be understood as approving of the California practice in its entirety. See also *Elite Dairy Products v. Ten Eyck,* 271 *N. Y.* 488, 3 *N. E.* 606 (*Ct. App.* 1936). But *cf. Weekes v. O'Connell,* 304 *N. Y.* 259, 107 *N. E.* 2d 290 (*Ct. App.* 1952).

Certainly it is more soul-satisfying to the litigant to have the decisional power rely upon the report of one who has heard the argument rather than upon an intra-agency memorandum of anonymous authorship. The detailed report is made by those who have heard the presentation, and where the competence of the "hearers" is on a par with that of the panel members herein the decisional authority not only would but should accord highest respect to the report. The statutory provision which dispenses with the necessity of reducing the stenographic notes to writing represents a legislative intention to emphasize the role of the panel report in the decisional process. The character of the decision thus becomes more "personalized" and less "institutionalized." It is not surprising that the result is at once applauded by the various schools of thought in the administrative field. *E. g., Schwartz, "Institutional Administrative Decisions and the Morgan Cases: A Re-examination,"* 4 *Journal of Public Law* 49, 76 (1955); *Davis, Administrative Law,* p. 341–342 (1951); *cf. Cooper, "Administrative Law: Let Him Who Hears Decide,"* 41 *A. B. A. J.* 705 (1955). And note the significant recommendation for amendment of the Federal

Administrative Procedure Act to require hearing officers to make initial decisions in all cases where the person charged with decision has not presided at the hearing. *Commission on Organization of the Executive Branch of the Government, Task Force Report on Legal Services and Procedure, pp.* 201–6 (1955).

We conclude, then, that *R. S.* 54:2–18 is not unconstitutional because the Division members are empowered to decide solely upon the basis of a panel report.

This brings us to the second point of consideration, namely, whether the statute contemplates that the parties be given an opportunity to file exceptions to the report with the Division prior to final administrative determination. In terms it does not, but, as suggested by Mr. Justice Heher in *Pennsylvania R. Co. v. New Jersey State Aviation Comm.,* 2 *N. J.* 64, 71 (1949), the essentials of procedural due process may arise by implication from the legislative expression. And Sutherland, with abundant supporting authority, remarks:

"Thus where the administrative body is exercising a judicial function, although the statute does not expressly provide for it, notice and hearing may be inferred for the purpose of sustaining its constitutional validity. Likewise where provision is made for notice and hearing without designating the procedural steps to be followed the constitutional requirements will be implied." 3 *Sutherland on Statutory Construction* (3d ed. 1943), *sec.* 6602, *p.* 267.

See *Wong Yang Sung v. McGrath,* 339 *U. S.* 33, 49–50, 70 *S. Ct.* 445, 94 *L. Ed.* 616, 628 (1950). Where a hearing is required by statute it is proper to assume that a fair hearing was envisioned.

Initially, it is not amiss to restate a fundamental perspective of this case. We are not dealing with a delegation of the decisional power, *Horsman Dolls, Inc. v. State of New Jersey Unemployment Compensation Comm.,* 134 *N. J. L.* 77 (*E. & A.* 1946), and although we have attributed the lawmakers' design (via *R. S.* 54:2–18) to greatly enhance the panel report in the decisional process, the Division itself is charged with ultimate responsibility. The issue is not to be confused. See the First Morgan case, *supra,*

298 *U. S.*, at *page* 478, 56 *S. Ct.*, at *page* 910, 80 *L. Ed.*, at *page* 1294.

Plaintiff stakes reliance upon *Mazza v. Cavicchia,* 15 *N. J.* 498 (1954), in arguing its right to file exceptions to the panel report. Both Hoboken and the Division would distinguish *Mazza* upon several grounds and also lend emphasis to the fact that the plaintiff here did not at any stage of the proceeding request notice of nor opportunity to file exceptions to the written report of the panel.

In *Mazza* the hearing (which concerned revocation of a liquor license) was conducted by an examiner who thereafter submitted a written report to the Director of the Division of Alcoholic Beverage Control who had the decisional responsibility. The report was not submitted to the licensee during the agency adjudication, nor was it a part of the record on judicial review. *Mazza* had no opportunity whatsoever to controvert the contents of the report. The evil inherent in reaching a decision upon extra record facts was held to be equally potent where there was no opportunity to insure that such matters did not *in fact* influence the decision. To remove the danger it was essential to subject the report to the scrutiny of the licensee and allow him to controvert it. The dissenters were content that a fair hearing was given the licensee, emphasizing that the Director had decided upon a mastery of the entire record made before the hearer.

There may be distinguishing features in the case *sub judice* from *Mazza,* but only the most significant need be considered. Here the panel report is a public record, *R. S.* 54:2–18, and, as stated by Judge Clapp below, "error and impropriety therein, if there be any, must be exposed." 40 *N. J. Super.*, at *page* 15. The short of it is that exposure is the safeguard, a factor not present in *Mazza.*

Where, however, is the safeguard to be effected—in the agency or in the courts? The holding of the Appellate Division would seem to be that detection of "errors and improprieties" in the panel report can await remedy until judicial review. If this is the proper interpretation we acknowledge its correctness, *N. J. Constitution, Art.* VI, *Sec.* V,

*par.* 3; *In re Kresge-Newark, Inc.,* 30 *N. J. Super.* 489, 501 (*App. Div.* 1954); accord *Cullum v. Bd. of Education of Tp. of North Bergen,* 15 *N. J.* 285, 294 (1954), but not its fairness nor practicality. Due process must obtain in the initial consideration itself.

"The requirements of fairness are not exhausted in the taking or consideration of evidence, but extend to the concluding parts of the procedure as well as to the beginning and intermediate steps." *Morgan v. United States,* 304 *U. S.* 1, 20, 58 *S. Ct.* 773, 777, 82 *L. Ed.* 1129, 1133 (1938) (*Morgan* II)

The fact that the Division may base its decision solely upon the panel report more than outweighs any distinctive features in the operative background of *Mazza* from the present case. Its rationale is equally applicable here.

"The individual litigant is entitled to be apprised of the materials upon which the agency is acting. He has a right not only to refute but, what in a case like this is usually more important, to supplement, explain, and give different perspective to the hearer's view of the case." *Mazza v. Cavicchia, supra,* 15 *N. J.,* at *page* 515

Due process requires that the litigant be allowed to make an impressionable contact with the powers of decision. This can only be realized by notifying the parties of the report and giving them an opportunity to file exceptions thereto, citing such portions of the record as bear on the issues raised for the individual consideration of the members of the Division. The Division of Tax Appeals is free to accommodate the legislative design. *R. S.* 54:2-14.

Therefore, although the power to rectify lies with the courts, we do not think the Legislature intended that a subsequent judicial remedy be applied to inject fairness into the agency decisional process. It must also be recognized that a determined reluctance to exercise this power exists, especially in complex matters deserving specialized attention. *Delaware L. & W. R. Co. v. City of Hoboken,* 10 *N. J.* 418, 424-425 (1952). This reluctance is nowhere better demonstrated than in the rule that decisions of the Division will be upheld unless the evidence is persuasive that it erred.

*Aetna Life Insurance Co. v. City of Newark*, 10 *N. J.* 99, 104 (1952) ; *Atlantic City Transp. Co. v. Director, Div. of Taxation*, 12 *N. J.* 130, 141 (1953).

If it be urged that the courts measure the requirements of a fair hearing through the necessities of the governing rather than the governed, it will be sufficient answer to call attention to the administrative procedure acts which have been enacted by both federal and state governments, all of which permit the parties to file exceptions to an examiner's report prior to the final agency decision. Federal Administrative Procedure Act, 5 *U. S. C. A.*, sec. 1007(*b*) ; and see *Harris, "Administrative Practice and Procedure: Comparative State Legislation,"* 6 *Okla. L. R.* 29, 49–53 (1953). Section 10 of the Model State Administrative Procedure Act (1946) is indicative. It provides, *inter alia*:

> "Whenever in a contested case a majority of the officials of the agency who are to render the final decision have not heard or read the evidence, the decision, if adverse to a party to the proceeding other than the agency itself, shall not be made until a proposal for decision, including findings of fact and conclusions of law, has been served upon the parties, and an opportunity has been afforded to each party adversely affected to file exceptions and present argument to a majority of the officials who are to render the decision, who shall personally consider the whole record or such portions thereof as may be cited by the parties."

The legislative history of the federal act (5 *U. S. C. A.* 1001 *et seq.*) indicates that its framers thought the legislation set down elemental rules of fairness. 92 *Cong. Rec.* 2151 (1946) ; *Sen. Doc. No.* 248, 79th *Cong. 2d Sess* iii (1946). Our own Legislature has had numerous opportunities to enact legislation of a similar tenor from 1948 to the present year. In 1948, 1949, 1950, 1952, 1955, 1956 administrative procedure bills have been introduced. See, *e. g., N. J. Senate No.* 42 (1956). For reasons best known to the lawmakers no enactments have been forthcoming.

We are dealing here with elemental procedural safeguards which look to long-range protection. *Wong Yang Sung v. McGrath, supra.* But *cf. United States v. L. A.*

*Tucker Truck Lines,* 344 *U. S.* 33, 73 *S. Ct.* 67, 97 *L. Ed.* 54 (1952). Where this is the case sound judgment dictates that the matter be remanded to allow the parties the opportunity which due process affords them in the administrative process. *Cf. Metropolitan Motors v. State of New Jersey, etc.,* 39 *N. J. Super.* 208 (*App. Div.* 1956).

Consideration of the merits would be premature in view of the conclusions expressed in this opinion, and as previously noted, they have not been raised by the plaintiff and hence not evaluated by us.

For the reasons herein expressed the judgment will be reversed and the cause remanded to the Division of Tax Appeals to allow the parties to file exceptions to the panel report within such reasonable time as the Division of Tax Appeals prescribes.

No costs will be taxed to any party.

*For reversal and remandment*—Justices HEHER, OLIPHANT, WACHENFELD, BURLING and JACOBS—5.

*For affirmance*—None.