43 N.J. Super. 277 (1957)
128 A.2d 491
NORDCO, INC., PLAINTIFF-APPELLANT,
v.
STATE OF NEW JERSEY, DEPARTMENT OF LAW AND PUBLIC SAFETY, DIVISION OF ALCOHOLIC BEVERAGE CONTROL, THE BOARD OF ALCOHOLIC BEVERAGE CONTROL OF THE CITY OF NEWARK, NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 21, 1956.
Decided January 10, 1957.
*280 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. George B. Astley argued the cause for Nordco, Inc.
Mr. Samuel B. Helfand argued the cause for the Division of Alcoholic Beverage Control (Mr. Grover C. Richman, Jr., Attorney-General).
Mr. Jacob M. Goldberg argued the cause for the Board of Alcoholic Beverage Control of the City of Newark (Mr. Vincent P. Torppey, Corporation Counsel; Mr. James E. Abrams, on the brief).
*281 The opinion of the court was delivered by CLAPP, S.J.A.D.
Nordco, Inc. appeals from an order of the Division of Alcoholic Beverage Control, affirming a determination of the Board of Alcoholic Beverage Control of the City of Newark, which refused to renew Nordco's plenary retail liquor consumption license for the licensing year July 1, 1956 to June 30, 1957. The Newark Board had also refused to renew the license for the preceding year, but it had been reversed by the Division with respect to that year. Bulletin 1114, Item 5.
Nordco had been operating a tavern at 213 Court Street, Newark, for some years. On January 3, 1955 its license was suspended 20 days for allowing or suffering a brawl to take place on the premises, and on May 8, 1956 it was suspended another 20 days (reduced to 15 days by reason of a plea of non vult) for selling liquor on Sunday, July 10, 1955. On July 3, 1955 and on April 29, May 11 and July 2, 1956 disturbances or assaults occurred in the tavern, leading to investigations by the police. Indeed, it appears that within the licensing year ending June 30, 1956, Nordco called the police for help 59 times, primarily through the medium of a Newark District Telegraph buzzer installed in the tavern.
Nordco contends that these 59 calls for police assistance, including the disturbances and brawls above mentioned, should not figure in the case since no claim is made that Nordco was in any way to blame for these incidents. Indeed, the Division, when dealing with Nordco's application to renew its license for the year ending June 30, 1956, had said that licensees should be encouraged to summon the police when trouble appears in the offing. However, when the Division came to consider Nordco's present application, it pointed out that the frequency of the calls upon the police demonstrated of itself that the tavern had become a "trouble-spot." Confirmation of this is to be found in the testimony of one detective before the Division, and a stipulation as to the testimony of another detective  both of whom were assigned to the area in which Nordco is located  that Nordco had more trouble than any other tavern in that difficult *282 area. We think these to be significant matters. It seems to us entirely proper for both the local and the state agencies, when passing on such applications, to take into account not only the conduct of the licensee, but also conditions, not attributable to its conduct, which render a continuance of a tavern in a particular location against the public interest.
Whether or not a license should be renewed rests in the sound discretion of the local issuing authorities and of the Division on appeal. Zicherman v. Driscoll, 133 N.J.L. 586, 588 (Sup. Ct. 1946); N.J.S.A. 33:1-38. The courts will interfere in the exercise of that discretion only in case of manifest error, clearly unreasonable action or some more untoward impropriety. Rajah Liquors v. Division of Alcoholic Bev. Control, 33 N.J. Super. 598, 600 (App. Div. 1955). We cannot say that the reliance put by the Division on the 59 calls, and on the fact that this tavern was a trouble spot, constitutes manifest error or an abuse of discretion.
The Division's determination is challenged on the further ground that the very inconsistency between that determination and the one made by it with respect to the preceding year is evidence of its own arbitrariness. But we do not think the point to be well taken. As above noted, there were in the licensing year July 1, 1955 to June 30, 1956, 59 calls upon the police for help, whereas the Division's decision for the preceding year observed merely that the police were called "on occasions" during that year. More significant than that, perhaps, is the fact that in the year ending June 30, 1956 another offense was committed, namely, the above-mentioned sale of liquor on a Sunday, a sale made by Ben F. Norden, vice-president of Nordco. This resulted in suspensions of the license for a period in two successive years.
One of Nordco's principal contentions is that it was not afforded either the hearing before the Newark board, or the notice of that hearing, to which it claims to have been entitled. It might be noted preliminarily that the parties *283 do not raise any question as to due process, except that they cite Adams Theatre Co. v. Keenan, 12 N.J. 267, 278, 279 (1953), for the proposition that a hearing before an agency may not be essential to due process in connection with a license proceeding, provided an opportunity for judicial review is afforded. See State Board of Milk Control v. Newark Milk Co., 118 N.J. Eq. 504, 523 (E. & A. 1935); Metropolitan Motors v. State, 39 N.J. Super. 208, 212 (App. Div. 1956); Bourjois, Inc., v. Chapman, 301 U.S. 183, 189, 57 S.Ct. 691, 81 L.Ed. 1027, 1032 (Brandeis, J., 1937); cf. Pennsylvania Railroad Co. v. Dept. of Public Utilities, 14 N.J. 411, 426 (1954). However, the parties do not deal with Fifth Street Pier Corp. v. City of Hoboken, 22 N.J. 326, 336-339 (1956). See further Davis, "Requirement of a Trial-Type Hearing," 70 Harv. L. Rev. 193, 262-274 (1956); Schwartz, "Administrative Law," 31 N.Y. Univ. L. Rev. 1370, 1372, 1373 (1956); Davis, Administrative Law, 269 (1951).
Nordco does, however, rely on N.J.S.A. 33:1-24, which requires a local board "to conduct public hearings on applications and revocations." Cf. Florence Methodist Church v. Township Committee, Florence Tp., 38 N.J. Super. 85, 90 (App. Div. 1955); Byse, "Opportunity to be Heard in License Issuance," 101 U. Pa. L. Rev. 57 (1952) (the article deals with retail sales of alcoholic beverages); State Regulation No. 2, Rules 6-8.
But we need not stop to inquire as to the extent of the duty imposed by that statute, for there is a Newark ordinance, specifically applicable here, which requires a hearing, in these terms:
"In the event any application for the renewal of license shall be questioned by the local issuing authority for any reason * * * then the applicant for renewal of such license shall be given notice of the reasons of the local issuing authority * * * and a day shall be set for hearing before the local issuing authority upon due notice to the applicant of the day of hearing in order that the applicant may be afforded an opportunity to show cause why the application should be granted.
If, after hearing, the local issuing authority is of the opinion that application for the renewal of license shall not be granted, *284 it shall refuse to grant renewal, setting forth reasons for refusal in the minutes of its meeting." Revised Ordinances of the City of Newark (as revised, effective Oct. 27, 1952), § 3.35.
Pursuant to the ordinance, the Newark board did give notice to Nordco of a purported hearing. However, Nordco complains that the notice, which in general terms charged Nordco with conducting "the premises * * * improperly," made particular reference merely to the sale of liquor on Sunday, July 10, 1955, without mentioning either the brawl that led to the suspension in the preceding licensing year, or the conditions that made this a trouble spot.
Moreover, at the hearing the board refused to take testimony, saying through its chairman:
"I want to say, for all the lawyers here and the parties who have been called in * * *, that they have been asked to come here today to show cause, to the A.B.C., as to why their licenses should be renewed for the new term.
There is not going to be any testimony taken here today. We are going to listen to the respective police captains who have rendered disapprovals in their own estimation to each one of these matters. No testimony [is] to be taken, it will be on motion and argument of counsel. There will be no testimony taken today."
Apparently no objections were taken to this statement. In any event, in pursuance of it plaintiff was not permitted to produce witnesses. Facts were brought out only through the examination and a fairly full cross-examination of a police captain who was in charge of the local precinct. However, his knowledge of the circumstances was in a number of respects hearsay, and more than that, he was not put under oath.
But the significant matter here, which plainly shows up after the parties were afforded an ample opportunity to adduce proofs in the Division, is that the facts of the case are not in dispute, and, more than that, a sufficient picture of all their essential aspects was in substance brought out by the police captain before the Newark board. It is true that he made no mention of the 59 calls, but he did refer to the two suspensions and the four assaults or disturbances *285 above stated, as well as to some 16 other incidents in the six or seven years preceding; and we think he said quite enough to indicate that this tavern was a "trouble spot." Moreover, after the captain had been examined, Nordco's counsel was given an adequate opportunity to argue the question whether in view of these undisputed facts the license should issue.
We need not decide what definition is to be put upon the word "hearing," as used in the Newark ordinance  that is, whether in a case where the facts are informally brought before the agency and are not in dispute, the requirement of a hearing is satisfied by merely affording the litigant an opportunity to present oral argument thereon. Indeed, Davis doubts whether even an opportunity for argument need be afforded in such a case. See Davis, "The Requirement of a Trial-Type Hearing," 70 Harv. L. Rev. 193, 214-222, 271 (1956); Davis, "Administrative Law" §§ 67, 68 (1951); cf. Handlon v. Town of Belleville, 4 N.J. 99, 105 (1950).
The parties have given no attention to these important questions, and we therefore skirt them and rest our decision on the doctrine of harmless error. As particularly stated in our present rules and, before them, in the Practice Act of 1912, the appellate courts of this state will not reverse or grant a new trial in order to correct some erroneous action below, unless the error "appears * * * to be inconsistent with substantial justice" (R.R. 1:5-3(b)), or "appears" to have "injuriously affected" the substantial rights of the parties (Practice Act, L. 1912, c. 231, § 27), or probably had a substantial influence on those rights (Maccia v. Tynes, 39 N.J. Super. 1, 11, 12 (App. Div. 1956)). See Sunderland, "The Problems of Appellate Review," 5 Tex. L. Rev. 126, 146-148 (1927). The error here consists of a failure to comply with the directions of an ordinance, and possibly those of a statute, both relating to administrative procedure. But the fact that such directions emanate from a municipal governing body or even the Legislature, does not affect the rule, except in the unusual situation where because of some policy involved, it may be said that the ordinance or statute *286 is concerned with something more than the matter of justice in the particular case or where the court itself, endeavoring to lay down a guide for the tribunal below in the future or to satisfy some fundamental policy, is induced to look beyond the case. Compare Kotteakos v. United States, 328 U.S. 750, 764, 765, 66 S.Ct. 1239, 90 L.Ed. 1557, 1566 (1945); Simmons v. United States, 348 U.S. 397, 405, 406, 75 S.Ct. 397, 99 L.Ed. 453, 459 (1955). We cannot be persuaded that the ordinance or statute or the court's own concerns reach to that length under the particular circumstances presented here.
Nor need we in this case deal with the appearances and probabilities referred to in R.R. 1:5-3(b) and Maccia; for it seems to us to be plain that the appellant has not been prejudiced here. In a situation such as that, it was settled long before the Practice Act that an appellate court will not interfere. Smith v. Ruecastle, 7 N.J.L. 357, 361 (Sup. Ct. 1800); Graham v. Whitely, 26 N.J.L. 254, 260 (Sup. Ct. 1857); Ruckman v. Bergholz, 37 N.J.L. 437, 441 (E. & A. 1874); cf. L. 1855, c. 226, § 2; L. 1898, p. 915, § 136.
Accordingly, if we assume that the board's denial of an opportunity to present testimony and its failure to give a more adequate notice created infirmities in the proceeding before it, nevertheless Nordco cannot as a matter of substantial justice claim to have been prejudiced in the circumstances presented. Benzoni v. Department of Civil Service, 10 N.J. Super. 103, 106 (App. Div. 1950); Klein v. Township of North Bergen, 10 N.J. Super. 128, 131 (App. Div. 1950); Neiden Bar and Grill v. Municipal Bd., etc., Newark, 40 N.J. Super. 24, 29 (App. Div. 1956).
We are by no means sanctioning a disregard of the Newark ordinance in the future. On the contrary, factual issues before the Newark board, which fall within the scope of the ordinance, should be resolved through a hearing, conducted in the manner referred to in Handlon v. Town of Belleville, 4 N.J. 99, 105 (1950). Only in this fashion in the ordinary case can justice be done (as it should be done) "in the initial *287 consideration itself." Fifth Street Pier Corp. v. City of Hoboken, 22 N.J. 326, 337 (1956).
But here there was no prejudice. In view of that conclusion, we need not consider another approach to these problems, which has been adverted to by the parties: it is said that in every case the right to a hearing de novo in the Division, on testimony taken there (Cino v. Driscoll, 130 N.J.L. 535, 539 (Sup. Ct. 1943)), cures any infirmity allegedly arising by reason of a denial of a hearing before the local board. However, as observed at the oral argument, the hearing is not de novo entirely; the burden which falls on the applicant before the board, namely, to make out his case by a preponderance of the proofs (Family Finance Corp. v. Gaffney, 11 N.J. 565, 575 (1953); Holly v. Bates, 7 N.J. 191, 197, 198 (1951)), becomes heavier on his appeal to the Division, since in a discretionary matter such as this he must show manifest error or some abuse of discretion below. Rajah Liquors v. Division of Alcoholic Bev. Control, 33 N.J. Super. 598, 600 (App. Div. 1955). Indeed, where the facts of a case are in dispute and the local board does not permit the licensee to offer evidence in his behalf, the Division would not even know what action the local board would have taken had it been apprised of all the facts. Would (or should) the Division sit as a board in such a case? But we need not pursue the point. As already stated, there was no denial of substantial justice by the Newark board here; the facts were laid before it in substance and were not, in reality, in dispute and, more than that, an opportunity was afforded by it for oral argument. Accordingly, we need not consider whether, and in what cases, the hearing before the Division would cure an infirmity below.
Nordco contends next that the punishment visited upon it, namely, the refusal to renew its license, was unreasonable and unjust. The contention rests in substance on a charge of disparate treatment among the licensees in Newark. Cf. Butler Oak Tavern v. Division of Alcoholic Beverage Control, 20 N.J. 373, 379 et seq. (1956), emphasizing that such a problem must be considered in the *288 light of the broad discretion vested in the agency; Biscamp v. Township Council of Tp. of Teaneck, 5 N.J. Super. 172, 175 (App. Div. 1949). Even in the case of a criminal sentence, disparate treatment within the statutory limits is not regarded as a ground for judicial interference (State v. Benes, 16 N.J. 389, 396 (1954); Orfield, Criminal Appeals in America, 106 (1939); Annotations, 29 A.L.R. 318, 89 A.L.R. 299), except perhaps where there has been an abuse of discretion. State v. Schmelz, 17 N.J. 227, 238 (1955); Hall, "Reduction of Criminal Sentences," 37 Columbia L. Rev. 762, 775 (1930); Orfield, Criminal Appeals, supra, p. 110; see cases, 24 C.J.S., Criminal Law, § 1878, p. 782, note 56.
Some general assertions are made by Nordco as to proceedings in Newark for the renewal of licenses over the last 20 years; and some reference is made to certain licensees whose licenses have been renewed, even though they were guilty of some single, much more serious offense than is involved here, or guilty of as many as four minor violations spread over a period of years. We do not need to probe these assertions  though we may say that it does not appear that the other licensees referred to had, like Nordco, their licenses suspended in the current and also the preceding licensing years, nor that any of them had called for help from the police 59 times during the year. Indeed, it may be that the Newark board in the exercise of its discretion might properly have refused to renew other licenses. However, as an appellate court, we are concerned merely with the question whether the refusal to renew Nordco's license was the result of intentional discrimination or other arbitrary action. Camden County v. Pennsauken Sewerage Auth., 15 N.J. 456, 469, 471 (1954). And Nordco has not established that here.
Nordco argues finally that the determination below should be reversed or modified because it was not afforded a reasonable opportunity to transfer its license and realize on the good will built up by it in connection with the place where the tavern was located. The point can be disposed *289 of simply by saying that we are not going to hold, as a general matter, that the Division and the local board abuse their discretion in not allowing a licensee such an opportunity when his application to renew his license is about to be rejected. The Director said in his conclusions: "`Were I to follow this procedure [of affording such opportunities] as a general practice, a desirable reduction in the number of licensed places would never be accomplished.'" In addition, it is to be observed that in view of the Division's determination that the tavern constituted a "trouble spot," it could hardly be claimed that there was any abuse in discretion in not affording Nordco an opportunity to transfer the license to a certain vendee under contract with Nordco, who wanted to continue the business at the same location.
Affirmed.