(No. 39214.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* EDGAR PERRY, Appellant.

*Opinion filed March 24, 1966.*

ROBERT H. JONES, of Peoria, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, (FRED G. LEACH, Assistant Attorney General, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

After a trial by jury in the circuit court of Tazewell County, the defendant, Edgar Perry, was found guilty of knowingly permitting a building owned by him to be used as a gambling place, and was fined the sum of $500. He has come directly to this court for review contending that he was not proved guilty beyond a reasonable doubt, that the jury was improperly instructed, and that the trial court erred in refusing to suppress certain evidence alleged to have been confiscated in violation of the State and Federal constitutional prohibitions against unreasonable searches and seizures. And while the latter contention serves to invest us with jurisdiction of the direct appeal, the constitutional question it presents need not be decided since in our opinion it is unnecessary to do so. *Cf. People* v. *Sledge,* 25 Ill.2d 403; *People* v. *Metcoff,* 392 Ill. 418.

On May 25, 1963, defendant was for all practical purposes the owner and operator of a tavern property located at 112 Center Street in East Peoria, and was likewise the owner of a building, originally constructed as a two-story

dwelling house, located on adjoining premises at 114 Center Street. Prior to 1959, defendant had operated an auction sales business at 114 Center, and during 1958 had constructed an underground tunnel connecting the two buildings, the presence of which was commonly known and plainly discernible from the outside. In July, 1959, and continuing through May 25, 1963, defendant leased the structure at 114 Center to Washington Irving Beckman, except for one first floor room which was rented by defendant to the operator of a barber shop. During the period of Beckman's tenancy the tunnel was closed off by locked doors at either end. According to Beckman, he had rented the premises as a residence about the time he and his wife had separated, and slept there most of the time, but he conceded that he had become reconciled with his wife and that he also had a residence in Peoria where he kept his clothing. He also acknowledged that he had permitted "friends" to gamble in the building, and to move in some gambling equipment, but there is nothing in the record tending definitely to establish the time of the beginning of such activities or the frequency of their occurrence.

So far as the record shows the police had neither complaint nor knowledge of gambling on the premises until the early morning hours of May 25, 1963, when East Peoria police officers peeked through an aperture made to accommodate a ventilating fan and observed persons gambling. Several hours later, at about 4:50 A.M., East Peoria police and State troopers forcibly broke open the front and rear doors of the structure at 114 Center. A number of persons playing cards and shooting dice were arrested and a quantity of gambling paraphernalia, such as dice, dice table, cards and poker chips, was confiscated. The officers also broke the tunnel door located at 114, but were unsuccessful in forcing the door at the tavern end of the tunnel. Defendant, whom the officers had observed inside the tavern at 112 Center immediately prior to the raid,

emerged therefrom as patrons arrested at 114 were being loaded into a patrol wagon. Although there was no showing that he sought to interfere, he was also arrested and held for "gambling investigation."

By the express terms of the statute under which defendant was charged, (Ill. Rev. Stat. 1961, chap. 38, par. 28—3,) it was necessary for the prosecution to prove three elements beyond a reasonable doubt. First, that defendant owned, occupied or controlled the building at 114 Center; second, that the building was used for purposes of gambling; and third, that defendant "knowingly" permitted such use. (See: *People* v. *Smith,* 50 Ill. App. 2d 361.) It may be conceded that the first two elements were clearly and satisfactorily established, but in our opinion the evidence falls short of proving, beyond a reasonable doubt, that defendant knowingly permitted the unlawful use.

To establish proof of the element of knowledge, the People rely principally upon the testimony of police officer William Martin, and that of Harold Nixon, the latter the estranged husband of a daughter of defendant. The tenor of Nixon's testimony was that he had been inside the building at 114 Center in April, 1960, to remove an item of furniture, at which time he had seen two round tables and was told by defendant's wife that they were used for playing cards. Further, Nixon testified he had on several occasions conversed with his father-in-law about "the use to which the building at 114 Center was being put." Officer Martin testified only that he had on numerous occasions seen defendant either standing on the porch or entering the door at 114 Center; and estimated that the last occasion was "maybe a month, maybe two weeks," prior to the raid. According to another officer, at the jail after the raid, he heard defendant tell one of the arrested patrons not to worry about a bond or fine, and that he, defendant, would "take care of it all."

While we recognize that "knowledge" is a mental state, (see: Ill. Rev. Stat. 1963, chap. 38, pars. 4—3, 4—5,) and often difficult to prove, those circumstances do not lessen the obligation of the prosecution to prove such element beyond a reasonable doubt. At best the evidence here does little more than to excite suspicion that defendant had the requisite guilty knowledge. There is no direct proof, and in our opinion the facts proved and relied upon by the prosecution do not lead to a rational conclusion or doubt-free inference of such knowledge. We find no definite proof as to when the gambling activities started at 114 Center, and neither is there proof that the gambling was so frequent and notorious that defendant should have been alerted. Rather, the only definite proof of gambling on the premises relates to the activities discovered by the police on May 25, 1963. Under these circumstances, we are asked to infer that there was gambling on the premises because Nixon saw two round tables used for card playing in April, 1960, and then to infer that defendant knew of such gambling because he had been seen about the premises in the year preceding the raid. We are not unmindful that Nixon testified that he had discussed "the use" of the premises with defendant. Once again, however, we are left to infer that "the use" was for gambling purposes. Too much is left to inference and speculation, and one should not be deprived of his liberty or held guilty of a crime on so tenuous a basis.

Accordingly, we conclude that defendant was not proved guilty beyond a reasonable doubt, and the judgment of the circuit court of Tazewell County is therefore reversed.

*Judgment reversed.*