STATE OF NORTH CAROLINA v. WILLARD HORACE COLSON

No. 1

(Filed 9 October 1968)

1. Criminal Law § 146;    Appeal and Error §§ 1, 3—    appeal    from
   Court of Appeals to Supreme Court — substantial constitutional question
     An appeal may be taken as a matter of right to the Supreme Court from any decision of the Court of Appeals rendered in a case which directly involves a substantial question arising under the Constitution of the United States or of this State. G.S. 7A-30(1).

2. Criminal Law § 146;    Appeal and Error §§ 1, 3—    appeal    from
   Court of Appeals to Supreme Court — substantial constitutional question — jurisdiction of Supreme Court — scope of review
     An appellant seeking to appeal to the Supreme Court from a decision of the Court of Appeals as a matter of right on the ground that a substantial

constitutional question is involved must allege and show the involvement of a real and substantial constitutional question which has not already been the subject of conclusive judicial determination, the allegation of a superficial or frivolous constitutional question or the mere mouthing of constitutional phrases like "due process" and "equal protection" being insufficient to avoid a dismissal of the appeal; once involvement of a substantial constitutional question is established, the Supreme Court will retain the case and may, in its discretion, pass upon any or all assignments of error, constitutional or otherwise, allegedly committed by the Court of Appeals and properly presented for review.

**3. Criminal Law § 84;   Searches and Seizures § 1——   evidence gained by illegal search and seizure — Mapp. v. Ohio**

Since the decision of *Mapp v. Ohio,* 367 U.S. 643, evidence unconstitutionally obtained is excluded in a state court, not as a rule of evidence, but as an essential of due process.

**4. Criminal Law § 84;   Searches and Seizures § 1——   ▪ evidence rendered incompetent by G.S. 15-27**

Evidence is not rendered incompetent by G.S. 15-27 unless it was obtained (1) in the course of a search, (2) under conditions requiring a search warrant, and (3) without a legal search warrant.

**5. Criminal Law § 84;   Searches and Seizures § 1;   Constitutional Law § 21——   prohibition of unreasonable searches and seizures**

The Constitution does not prohibit all searches and seizures but only those which are unreasonable.

**6. Criminal Law § 84;   Searches and Seizures § 1——   definition of unreasonable search**

An unreasonable search is an examination or inspection without authority of law of one's premises or person with a view to the discovery of some evidence of guilt to be used in a criminal prosecution.

**7. Criminal Law § 84;   Constitutional Law §§ 21, 37; Searches and Seizures § 2——   waiver of immunity from unreasonable search and seizure — consent**

An individual may waive his immunity from unreasonable searches and seizures; where an individual waives such immunity by consenting to a search of his person, he may not thereafter complain that his constitutional rights were violated by the search.

**8. Criminal Law § 84;   Constitutional Law § 37;   Searches and Seizures § 2——   consent to search without warrant — waiver**

One who voluntarily permits or expressly invites and agrees to a search, being cognizant of his rights, waives his constitutional protection against unreasonable searches and seizures.

**9. Criminal Law § 84;   Constitutional Law § 21;   Searches and Seizures § 1——   seizure without warrant — no search required — article in plain view**

The constitutional guaranty against unreasonable seizures does not pro-

hibit a seizure without a warrant where no search is required and the contraband matter is fully disclosed and open to the eye and hand.

**10. Criminal Law § 84; Searches and Seizures § 1— article in plain view or voluntarily revealed by defendant**

Where during a general conversation at the police station after being questioned about his wife's death, defendant offered to show officers a scar on his stomach, and in so doing revealed blood on his undershirt, and at the request of the officers defendant then voluntarily exhibited his bloodstained undershorts, the officers lawfully seized defendant's clothing without a warrant and the clothing was properly admitted into evidence, no search warrant being necessary when an incriminating article is in plain view or is revealed by the voluntary act of the defendant.

**11. Criminal Law § 42; Constitutional Law § 33— seizure of clothing worn by defendant — self-incrimination**

In a homicide prosecution, defendant's Fifth Amendment privilege against self-incrimination was not violated by the seizure from defendant's person and the subsequent chemical analysis of clothing allegedly worn by defendant at the time the homicide occurred.

**12. Criminal Law § 99— questions propounded by trial judge**

It is proper, and sometimes necessary, that the trial judge ask questions of a witness, but such examinations should be conducted with care and in a manner which avoids prejudice to either party.

**13. Criminal Law § 99— questions by court — expression of opinion**

Questions by the trial court which by their tenor, frequency, or by the persistence of the trial judge tend to convey to the jury in any manner at any stage of the trial the impression of judicial leaning violate G.S. 1-180 and constitute prejudicial error.

**14. Criminal Law § 99— questions by court to clarify testimony**

The questions asked witnesses by the court in this homicide prosecution *are held* not to constitute an expression of opinion by the judge, the questions serving only to clarify and promote a proper understanding of the testimony.

**15. Coroners; Criminal Law § 111— refusal to instruct on duties of coroners**

In a homicide prosecution, the court properly refused to instruct the jury on the statutory duties of coroners set forth in G.S. 152-7, such duties being collateral to the issue of defendant's guilt or innocence.

**16. Criminal Law § 161— assignments not supported by exception**

Assignments of error not supported by an exception will not be considered by the Supreme Court. Supreme Court Rule No. 19(3).

**17. Criminal Law §§ 146, 174— appeal from Court of Appeals to Supreme Court — constitutional question not raised in Court of Appeals**

Upon appeal to the Supreme Court from a decision of the Court of Appeals, the Supreme Court will not pass upon a constitutional question not raised and passed upon in the Court of Appeals.

**18. Criminal Law §84; Constitutional Law §37; Searches and Seizures §2— consent to search without warrant — waiver**

   Where police officers initially entered defendant's home by invitation of defendant's son and discovered the dead body of defendant's wife, the officers making a partial investigation at that time, evidence discovered in defendant's home by a search without a warrant later the same day when the officers resumed their initial investigation at the scene of the crime with defendant's consent and participation *is held* properly admitted into evidence, defendant's consent having dispensed with the necessity of a search warrant.

APPEAL by defendant from decision of the Court of Appeals upholding judgment of *Cohoon, J.,* at the November 1967 Criminal Term of PASQUOTANK County Superior Court.

Defendant was tried upon a bill of indictment charging him with the murder of his wife Kathren Ralph Colson on 3 August 1967. The solicitor sought a verdict of guilty of murder in the second degree or manslaughter, as the evidence might disclose. The jury convicted defendant of manslaughter, and a prison sentence of 12 to 15 years was imposed by the court. Defendant appealed to the Court of Appeals where his conviction and sentence was upheld, 1 N.C.App 339.

The case is now before us on appeal, defendant alleging involvement of substantial constitutional questions by reason of (1) an illegal search of his person and seizure of his clothing; and (2) an illegal search of his house and seizure of an empty Jacquin's Vodka bottle.

The State's evidence — defendant offered none — tended to show that defendant's wife was stabbed to death at her home in Elizabeth City on the night of 3 August 1967. Police officers went to the home in response to a telephone call from defendant's son received at approximately 12:30 a.m. on 4 August 1967. They were admitted by the son Willard Colson, Jr., and found the deceased in a slumped position on a settee in the living room with her head on the armrest. Examination revealed a stab wound in her chest which penetrated the heart and large vessels leading to the lungs. A search of the house at that time revealed a butcher knife approximately twelve inches long on the counter in the kitchen with blood on the blade. Blood spots were also found on the bed clothing and sheets in the bedroom and on the rugs.

Defendant arrived at the house at approximately 1:30 a.m. just as the body of his deceased wife was being placed in a hearse. He was highly intoxicated, smelled of alcohol and was staggering. He walked up and asked the chief of police: "Chief, what's wrong? Has she had a heart attack?" The chief of police replied: "No, she did

not have a heart attack; she has been stabbed." The defendant then asked: "What with, a butcher knife?" During this conversation defendant was not in custody and was not being questioned by the officers. The chief of police then requested defendant and his son to accompany him to the police station, and they did so voluntarily.

Defendant was given the *Miranda* warning at the police station, after which he told the officers he had gotten off work and arrived home about 5 o'clock p.m. on the preceding afternoon; that his wife had been drinking and provoked an argument, though there was no argument between them; that he left the house about 6 p.m., at which time his wife was lying sprawled out on the settee; that he went to the liquor store and purchased a pint of liquor and just drove around drinking it; that the butcher knife found in the kitchen of his home was his, but he expressly denied that he had ever cut his wife or that he knew who had done it.

Following the foregoing statement and during a general conversation at the police station, defendant offered to show the officers a scar on his stomach. When he opened his shirt, the officers saw blood on his undershirt and asked defendant if they might see the rest of his underclothes. Defendant voluntarily exposed his undershorts to view at which time blood was observed on them. When he was asked by the officers and by his son how the blood got on his underclothing, defendant did not answer.

A serologist testified that the blood of the deceased was type "AB" and the blood on defendant's undershirt and undershorts was type "AB," while defendant's blood was type "O". This witness further stated that he had made an examination of the blood spots on the garments of the deceased, on the sheets in the bedroom, and on the butcher knife, and all were found to be type "AB".

Defendant's clothing — T shirt, undershorts, dungarees and shirt — was taken from him by the police between 2:00 and 2:30 a.m. on 4 August 1967. At this time he was being detained at the police station for questioning but had not yet been placed under arrest. A warrant was not obtained until sometime between 8:30 and 9:00 a.m. on the morning of 4 August 1967, as soon as a magistrate was available to issue it.

The defendant remained at the police station from the time he arrived at approximately 1:30 a.m. until about 9:30 a.m. the same morning when he accompanied the officers on a return to his home to see if any other evidence which might have been overlooked the previous night could be located. The officers requested permission to

enter the home for that purpose, and defendant, offering no objection, entered with them. Upon making a further search, an empty pint Jacquin's Vodka bottle was found under a chest of drawers in the bedroom. An employee of the County ABC Board testified that defendant bought a pint of vodka from him on the evening of 3 August 1967 between 7:15 and 8:00 p.m., and identified the bottle found in the bedroom as having been sold from his register on 3 August 1967. The bottle, and the testimony concerning its discovery, was admitted into evidence over objection by defendant.

Defendant's motion for nonsuit at the close of the State's evidence was overruled. The jury found defendant guilty of manslaughter, and from a judgment of imprisonment defendant appealed to the Court of Appeals, where his conviction and sentence was upheld, and then to this Court assigning errors as noted in the opinion.

*Russell E. Twiford, O. C. Abbott and John S. Kisiday, Attorneys for defendant appellant.*

*T. W. Bruton, Attorney General, and Bernard A. Harrell, Assistant Attorney General, for the State.*

HUSKINS, J.

Article IV, Section 10 of the Constitution of North Carolina confers upon the Supreme Court "jurisdiction to review upon appeal any decision of the courts below, upon any matter of law or legal inference," authorizes establishment of the Court of Appeals with such appellate jurisdiction as the General Assembly may provide, and empowers the General Assembly by general law to provide a proper system of appeals.

In the exercise of its constitutional authority, the General Assembly created the North Carolina Court of Appeals effective January 1, 1967, as a part of the appellate division of the General Court of Justice, and defined the appellate jurisdiction of the Supreme Court and the Court of Appeals in these words: "The Supreme Court and the Court of Appeals respectively have jurisdiction to review upon appeal decisions of the several courts of the General Court of Justice . . . in accordance with the system of appeals provided in this article." G.S. 7A-26. See also G.S. 7A-5, 7A-16.

[1] The General Assembly then enacted a system of appeals providing, *inter alia*, that an appeal may be taken as a matter of right to the Supreme Court from any decision of the Court of Appeals rendered in a case which directly involves a substantial question

arising under the Constitution of the United States or of this State. G.S. 7A-30(1).

**[2]** In the case before us, defendant appeals to the Supreme Court, allegedly as of right, on the ground that a substantial constitutional question is involved. The initial question, therefore, for the Court to decide is: Does the case present a substantial constitutional question; and, if so, does the Supreme Court consider only the constitutional questions and nothing else, or may it pass upon all assignments of error allegedly committed by the Court of Appeals and properly brought forward for review? In other words, what is the scope of review upon an appeal as of right? This is a matter of first impression in North Carolina due to recent changes in our court structure. Decisions in other jurisdictions having intermediate appellate courts are only obliquely authoritative due to constitutional and statutory provisions at variance with ours.

Intermediate appellate courts exist in sixteen states. In some, the constitution or statutes provide for a direct appeal from the trial court to the highest court in cases involving a substantial constitutional question, by-passing the intermediate appellate court. See *Burke v. State,* 205 Ga. 520, 54 S.E. 2d 348; *Glos v. People,* 259 Ill. 332, 102 N.E. 763; *Capitol Indemnity Insurance Co. v. State,* 126 Ind. App. 535, 134 N.E. 2d 822; *New Orleans v. Vinci,* 153 La. 528, 96 So. 110, 28 A.L.R. 1382; *Fish v. Chicago R. I. & P. Ry.,* 263 Mo. 106, 172 S.W. 340; *Going v. Going,* 148 Tenn. 522, 256 S.W. 890, 31 A.L.R. 633. In "by-pass" states, involvement of a substantial constitutional question is jurisdictional, and the highest court is powerless to act absent a constitutional issue.

The Missouri Constitution, Article V, Section 3, provides: "The Supreme Court shall have exclusive appellate jurisdiction in all cases involving the construction of the Constitution of the United States or of this state. . . ." Hence, the Supreme Court of Missouri in *Taylor v. Dimmitt,* 336 Mo. 330, 78 S.W. 2d 841, 98 A.L.R. 995, said: "Our jurisdiction rests upon the constitutional issues involved. Having jurisdiction, this court will determine the whole case, irrespective of the issue upon which the case may turn."

In *Pennington v. Farmers' and Merchants' Bank,* 144 Tenn. 188, 231 S.W. 545, 17 A.L.R. 1213, plaintiff sued to recover the value of a $1,000 bond which had been lodged in the bank's vault for safekeeping and stolen by burglars. The trial court nonsuited under a statute which provided that the bank shall not be liable for loss by theft, robbery or fire. Plaintiff, contending the statute was unconstitutional for that it was arbitrary and unreasonable and discrim-

inatory in favor of banks, appealed directly to the Supreme Court alleging involvement of a constitutional question. The court said: "We do not think this legislation is applicable to the case before us, and therefore have no occasion to pass upon the constitutionality of the enactment. Nevertheless, as the constitutional question was fairly raised on the record, we retain jurisdiction of the case and will dispose of the other questions."

In Indiana, a statute provides that jurisdiction of an appeal shall be in the Supreme Court, rather than the intermediate appellate court, if a constitutional question is involved. The Indiana Supreme Court said: "But, in order for the Supreme Court to have jurisdiction of such a case, the constitutional question must actually be in-involved and be properly presented. It is not sufficient that it merely be alleged to be involved. If an allegation only was sufficient, it would be possible to appeal every case . . . to the Supreme Court or to obtain the transfer thereto of any case pending in the Appellate Court." *Pivak v. State,* 202 Ind. 417, 175 N.E. 278, 74 A.L.R. 406.

Article VI, Section 5, of the Constitution of Illinois provides, *inter alia,* that "appeals from the final judgments of circuit courts shall lie directly to the Supreme Court as a matter of right only . . . (b) in cases involving a question arising under the Constitution of the United States or of this State. . . . Appeals from the Appellate Court shall lie to the Supreme Court as a matter of right only (a) in cases in which a question under the Constitution of the United States or of this State arises for the first time in and as a result of the action of the Appellate Court. . . ."

In *People v. Perry,* 34 Ill. 2d 229, 215 N.E. 2d 229, defendant was convicted in the trial court and appealed directly to the Supreme Court alleging that the trial court erred in refusing to suppress evidence obtained by an unreasonable search and seizure in violation of his rights under the State and Federal Constitutions. The court said: "And while the latter contention serves to invest us with jurisdiction of the direct appeal, the constitutional question it presents need not be decided since in our opinion it is unnecessary to do so." The court then considered other assignments involving non-constitutional questions and reversed the judgment of the trial court on the ground that defendant had not been proven guilty beyond a reasonable. doubt.

In "double appeal" states, including North Carolina and New Jersey, cases involving a substantial constitutional question are appealable in the first instance to the intermediate appellate court

and then to the highest court as a matter of right. G.S. 7A-30(1);, New Jersey Constitution, Article 6, Section 5.

In New Jersey, if the alleged constitutional question is frivolous, the appeal will be dismissed. *Klotz v. Lee,* 21 N.J. 148, 121 A. 2d 369; *State v. DeMeo,* 20 N.J. 1, 118 A. 2d 1, 56 A.L.R. 2d 905. On the other hand, if a substantial constitutional question is *alleged and shown,* the Supreme Court may then consider all questions properly presented. ". . . [T]he constitutional question should be a real and not merely a superficial one. Consequently this court determined in the early days of the new system that a constitutional question . . . must be 'substantial', *Starego v. Soboliski,* 11 N.J. 29, 32, 93 A. 2d 169 (1952), cert den. 345 U.S. 925, 73 S. Ct. 784, 97 L. ed. 1356 (1953), and not 'merely colorable', *State v. Pometti,* 12 N.J. 446, 450, 97 A. 2d 399 (1953)." *Tidewater Oil Co. v. Mayor and Council of Carteret,* 44 N.J. 338, 209 A. 2d 105 (1965). The constitutional question relied upon must not have already been the subject of a conclusive judicial determination. *Tidewater Oil Co. v. Mayor and Council of Carteret, supra; State v. Pometti, supra.* See *Camden County v. Pennsauken Sewerage Authority,* 15 N.J. 456, 105 A. 2d 505 (1954); *Butler Oak Tavern v. Division of Alcoholic Beverage Control,* 20 N.J. 373, 120 A. 2d 24 (1956); *Fifth Street Pier Corp. v. City of Hoboken,* 22 N.J. 326, 126 A. 2d 6 (1956).

In 4 Am. Jur. 2d, Appeal and Error, § 14, we find this language: "For a case to be appealable as involving a constitutional question, the question must be actually involved in the case and must be properly presented; it is not sufficient that it merely be alleged."

It will be noted from the foregoing citations that in jurisdictions having intermediate appellate courts the appellant is invariably required to *allege and show* the involvement of a substantial constitutional question in order to gain entrance to the higher appellate court as a matter of right. Mere assertion of constitutional involvement will not suffice. This is true not only in jurisdictions employing a direct appeal by-passing the intermediate court but also in states employing the provision for double appeals as of right when a substantial constitutional question is involved. Once involvement of the basic question is established, however, the higher appellate court may then pass upon all assignments of error allegedly committed by the intermediate appellate court and properly brought forward for review.

It now becomes our duty to determine the scope of review upon an appeal as of right under the Constitution and laws of North Carolina. Brief historical reference reveals that the 1963 General As-

sembly by joint resolution created the Courts Commission and charged it with the duty of preparing and drafting legislation necessary for the full and complete implementation of Article IV of the Constitution. In establishing the North Carolina Court of Appeals, defining its jurisdiction, and providing a system of appeals, the Courts Commission was guided, *inter alia,* by the basic principle that there should be one trial on the merits and one appeal on the law, as of right, in every case. The Commission sought to avoid double appeals as of right, except in the most unusual cases, the importance of which may be said to justify a second review. See Report of the Courts Commission to the 1967 General Assembly, p. 4. That report depicts the legislative intent with respect to appellate jurisdistion in the following language on pages 10 and 11:

"In the beginning it must be understood that, in speaking of the jurisdiction of the Court of Appeals, we are necessarily also dealing with the jurisdiction of the Supreme Court. Under our pre-1965 Constitution, all appellate jurisdiction above the trial division was vested in the Supreme Court, and such jurisdiction as is now to be given to the Court of Appeals is necessarily taken from the Supreme Court. However, the exercise of jurisdiction given to the Court of Appeals may still be subject to review by the Supreme Court, and hence it is possible to speak with accuracy and clarity only of the jurisdiction of the *Appellate Division,* or of its two separate branches, the Court of Appeals *and* the Supreme Court.

"The 1965 amendment to the Judicial Article of the Constitution provides that the Court of Appeals shall have such appellate jurisdiction as the General Assembly may provide. This must be read in conjunction with the Supreme Court's power, set out in Art. IV, Sec. 10(1) '. . . to review upon appeal any decision of the courts below, upon any matter of law or legal inference,' and of the grant to the General Assembly in Art. IV, Sec. 10(5) [now (6)], to '. . . provide a proper system of appeals.' Construing these sections together, it is clear that the Supreme Court is empowered directly by the Constitution (though not compelled by it) to review any and all cases, and that under the Constitution the General Assembly may assign to the Court of Appeals such appellate jurisdictions as it sees fit. Thus, the only constitutional limitations on making any conceivable division of appellate labors and functions between the two are the limitations implicit in the fact that one is higher than the other in the hierarchy of the General Court of Justice."

A Bill embracing these philosophies was enacted into law as Chapter 108 of the 1967 Session Laws.

[2]    Construing the legislative intent and mindful of the New Jersey system to which we are kin, we hold that an appellant seeking a second review by the Supreme Court as a matter of right on the ground that a substantial constitutional question is involved must *allege and show* the involvement of such question or suffer dismissal. The question must be real and substantial rather than superficial and frivolous. It must be a constitutional question which has not already been the subject of conclusive judicial determination. Mere mouthing of constitutional phrases like "due process of law" and "equal protection of the law" will not avoid dismissal. Once involvement of a substantial constitutional question is established, this Court will retain the case and may, in its discretion, pass upon any or all assignments of error, constitutional or otherwise, allegedly committed by the Court of Appeals and properly presented here for review.

[10]    Defendant assigns as error the admission into evidence of the clothing he was wearing on the night his wife was killed (T shirt, undershorts, dungarees and shirt). These items were removed from his person about 2:00 a.m. on the morning of 4 August 1967 at the police station while defendant was detained during police investigation but prior to his actual arrest. Defendant contends the taking of his clothing was an unlawful search and seizure, violative of the Fourth and Fifth Amendments to the Federal Constitution and Article I, Section 15, of the Constitution of North Carolina. The State contends no search was involved, and the Court of Appeals so held.

[3]    Under common-law rules the admissibility of evidence was not affected by the means, lawful or otherwise, used in obtaining it, *Olmstead v. United States,* 277 U.S. 438, 72 L. ed. 944, 48 S. Ct. 564; *State v. McGee,* 214 N.C. 184, 198 S.E. 616; and, if the evidence was otherwise relevant and competent, it was generally admissible unless its admission violated the constitutional rights of the person against whom it was offered or contravened the statutory law of the jurisdiction. 29 Am. Jur. 2d, Evidence § 408. Notwithstanding such general common-law practice, the Supreme Court of the United States developed an exclusionary rule applicable in the federal courts whereby evidence that had been obtained in violation of the accused's rights under the Constitution, federal statutes, or federal rules of procedure was excluded. *U. S. v. Blue,* 384 U.S. 251, 16 L. ed. 2d 510, 86 S. Ct. 1416. This rule was first laid down in *Weeks v. United*

*States,* 232 U.S. 383, 58 L. ed. 652, 34 S. Ct. 341 (1914). There, the Court held that evidence obtained by federal officers in an illegal search and seizure violated defendant's constitutional rights under the Fourth Amendment and was inadmissible, but stated that the Fourth Amendment reached only the federal government and its agencies and did not apply to individual misconduct of state officers not acting under federal authority. Thus, evidence admittedly obtained by state or local officers by illegal search and seizure continued to be competent in state courts if otherwise relevant, unless prohibited by statutory law of the forum.

In *Wolf v. Colorado,* 338 U.S. 25, 93 L. ed. 1782, 69 S. Ct. 1359 (1949), the Court declined to extend the exclusionary rule adopted in *Weeks* to the states by the due process clause of the Fourteenth Amendment, stating that "in a prosecution in a State court for a State crime the Fourteenth Amendment does not forbid the admission of evidence obtained by an unreasonable search and seizure." However, twelve years later, in *Mapp v. Ohio,* 367 U.S. 643, 6 L. ed. 2d 1081, 81 S. Ct. 1684 (1961), it was held that "all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court." Since *Mapp,* the states are no longer free to adopt or reject at will the exclusionary rule as a means of enforcing the Fourth Amendment in state courts. Evidence unconstitutionally obtained is excluded in both state and federal courts as an essential to due process — not as a rule of evidence but as a matter of constitutional law.

[4] . The federal exclusionary rule enunciated in *Weeks* became statutory law in North Carolina long before *Mapp* by enactment of Chapter 339 of the 1937 Session Laws as amended by Chapter 644 of the 1951 Session Laws, codified as G.S. 15-27, which provides in pertinent part that "no facts discovered or evidence obtained without a legal search warrant in the course of any search, made under conditions requiring the issuance of a search warrant, shall be competent as evidence in the trial of any action." Evidence is not rendered incompetent under the foregoing section unless it was obtained (1) in the course of a search, (2) under conditions requiring a search warrant, and (3) without a legal search warrant. *State v. Coffey,* 255 N.C. 293, 121 S.E. 2d 736; *State v. Stevens,* 264 N.C. 737, 142 S.E. 2d 588.

So, in the case before us, if the circumstances under which defendant's clothing was taken required the issuance of a search warrant, the seizure was unlawful and the evidence inadmissible. Otherwise not.

**[5, 6]**    The Constitution does not prohibit all searches and seizures but only those which are unreasonable. *Carroll v. United States*, 267 U.S. 132, 69 L. ed. 543, 45 S. Ct. 280; *Elkins v. United States*, 364 U.S. 206, 4 L. ed. 2d 1669, 80 S. Ct. 1437. An unreasonable search has been defined as "an examination or inspection without authority of law of one's premises or person, with a view to the discovery of . . . some evidence of guilt, to be used in the prosecution of a criminal action." 47 Am. Jur., Searches and Seizures § 52.

**[7, 8]**    An individual may waive any provision of the Constitution intended for his benefit, including the immunity from unreasonable searches and seizures; and where such immunity has been waived and consent given to a search of his person, an individual cannot thereafter complain that his constitutional rights have been violated. If one voluntarily permits or expressly invites and agrees to the search, being cognizant of his rights, such conduct amounts to a waiver of his constitutional protection. 47 Am. Jur., Searches and Seizures § 71 and cases cited; *State v. McPeak*, 243 N.C. 243, 90 S.E. 2d 501; *State v. Moore*, 240 N.C. 749, 83 S.E. 2d 912.

**[9]**    Furthermore, under circumstances requiring no search, the constitutional immunity never arises. This principle is aptly stated in 47 Am. Jur., Searches and Seizures § 20, as follows: "Where no search is required, the constitutional guaranty is not applicable. The guaranty applies only in those instances where the seizure is assisted by a necessary search. It does not prohibit a seizure without warrant where there is no need of a search, and where the contraband subject matter is fully disclosed and open to the eye and hand." See *State v. Giles*, 254 N.C. 499, 119 S.E. 2d 394; *State v. Coffey*, 255 N.C. 293, 121 S.E. 2d 736; and *State v. Kinley*, 270 N.C. 296, 154 S.E. 2d 95.

**[10]**    Applying these principles to the evidence regarding defendant's clothing, we are of the opinion that the circumstances prevailing at the police station when defendant's clothing was taken required no search warrant. There was no need to search. As stated in the opinion of the Court of Appeals, 1 N.C.App. 339 at 343, 161 S.E. 2d 637, 640, ". . . the bloody underclothing was not discovered by the police officers as a result of any search being made by them of defendant's person. Rather, the defendant voluntarily exhibited his underclothing to them while, for whatever reasons of his own, he was engaged in showing them scars upon his body. When the incriminating article is in plain view of the officers or is revealed by the voluntary act of the defendant, no search is necessary and the constitutional guaranty does not apply."

[11]    Defendant's Fifth Amendment privilege against self-incrimination was not violated by seizure of his clothing. Clothing, like identifying physical characteristics such as blood samples, fingerprints, hair, the body itself, is outside the protection of the Fifth Amendment. *State v. Wright,* 274 N.C. 84, 161 S.E. 2d 581.

In *State v. Gaskill,* 256 N.C. 652, 124 S.E. 2d 873, defendant claimed the taking of his clothing for chemical analysis, followed by testimony that the stains found on them were human blood stains, constituted self-incrimination forbidden by Article I, Section 11, of the Constitution of North Carolina and the Fifth Amendment to the United States Constitution. The Court said: "This contention runs counter to State and Federal decisions. No constitutional rights were invaded when the officer required defendant to surrender for examination and analysis the clothing worn by him at the time the crime was alleged to have been committed." See *State v. Tippett,* 270 N.C. 588, 155 S.E. 2d 269 (1967).

It follows that seizure of defendant's clothing did not violate his rights under the Fourth or Fifth Amendments to the United States Constitution or under Article I, Section 15, of the Constitution of North Carolina. Defendant's first Assignment of Error is overruled.

[12-14]    Defendant assigns as error certain questions put to witnesses by the trial judge during the trial. The Court of Appeals found no merit in this assignment, and we agree. "It has been the immemorial custom for the trial judge to examine witnesses who are tendered by either side whenever he sees fit to do so. . . ." *State v. Horne,* 171 N.C. 787, 88 S.E. 433. Such examinations should be conducted with care and in a manner which avoids prejudice to either party. If by their tenor, their frequency, or by the persistence of the trial judge they tend to convey to the jury in any manner at any stage of the trial the "impression of judicial leaning," they violate the purpose and intent of G.S. 1-180 and constitute prejudicial error. *State v. McRae,* 240 N.C. 334, 82 S.E. 2d 67; *Andrews v. Andrews,* 243 N.C. 779, 92 S.E. 2d 180; *State v. Peters,* 253 N.C. 331, 116 S.E. 2d 787; *State v. Lea,* 259 N.C. 398, 130 S.E. 2d 688. Even so, this Court has said that "Judges do not preside over the courts as moderators, but as essential and active factors or agencies in the due and orderly administration of justice. It is entirely proper, and sometimes necessary, that they ask questions of a witness so that the 'truth, the whole truth, and nothing but the truth' be laid before the jury." *Eekhout v. Cole,* 135 N.C. 583, 47 S.E. 655. We have examined the questions by the judge to which exception was taken, and in our opinion no prejudice resulted from them. The questions

served only to clarify and promote a proper understanding of the testimony of the witnesses and did not amount to an expression of opinion by the judge. *State v. Carter*, 233 N.C. 581, 65 S.E. 2d 9; *State v. Grundler*, 251 N.C. 177, 111 S.E. 2d 1.

[15, 16] The statutory duties of coroners are set forth in G.S. 152-7. Defendant requested the trial judge to instruct the jury relative to these duties and assigns as error the approval by the Court of Appeals of his refusal to do so. These duties are collateral to the issue of defendant's guilt or innocence, and no instruction concerning them was required. Furthermore, the whole of the coroner's evidence, both direct and cross examination, was elicited without a single objection or exception. If this assignment had merit, which it hasn't, it has no foundation to support it. Only exceptive assignments of error are considered. Rule 19(3), Rules of Practice in the Supreme Court, 254 N.C. 783 at 797; *Darden v. Bone*, 254 N.C. 599, 119 S.E. 2d 634; *State v. Strickland*, 254 N.C. 658, 119 S.E. 2d 781. This is a perfect example of inconsequential assignments which the Supreme Court will not discuss in future appeals.

[17] Defendant asserts prejudicial error in allowing State's witness Boyce to testify concerning the finding of a vodka bottle in the bedroom, as shown by Exceptions 28 and 29 appearing in the transcript on pages 102, 103 and 108, alleging the bottle to be the tainted fruit of an illegal search. This assignment is not discussed in appellant's brief filed in the Court of Appeals, and no reason or argument is cited in support of it. Rule 28, Rules of Practice in the Court of Appeals, provides in pertinent part that "exceptions in the record not set out in appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned by him." That court apparently so considered it since evidence concerning the vodka bottle was discussed in its opinion only in connection with a different assignment involving the propriety of certain questions asked by the Judge.

Now in this Court for the first time in the appellate division, defendant seeks to inject the constitutionality of the search of the bedroom made by Officer Boyce and others between 9 and 10 a.m. on the morning of 4 August 1967 when an empty Jacquin's Vodka bottle, purchased by defendant at a local ABC store on the previous evening, was found under a chest of drawers. This he cannot do. The Supreme Court reviews the decision of the Court of Appeals for errors of law allegedly committed by it and properly brought forward for consideration.

"The attempt to smuggle in new questions is not approved. *Irvine*

*v. California*, 347 U.S. 128, 129 [98 L. ed. 561, 74 S. Ct. 381]: Appellate courts will not ordinarily pass upon a constitutional question unless it affirmatively appears that such question was raised and passed upon in the trial court. *State. v. Jones*, 242 N.C. 563, 564, 89 S.E. 2d 129. This is in accord with the decisions of the Supreme Court of the United States. *Edelman v. California*, 344 U.S. 357, 358 [97 L. ed 387, 73 S. Ct. 293]." *State v. Grundler*, 251 N.C. 177, 111 S.E. 2d 1. Thus, the new question is not properly before us because it was not raised and passed upon in the Court of Appeals.

[18]    Even so, we note that the officers initially entered defendant's home at 12:30 a.m. by invitation of defendant's son and found the dead body of defendant's wife on a settee in the living room. A *partial* investigation at that time resulted in the discovery of a bloody butcher knife, apparently the death weapon, and blood spots on bed clothing, sheets and rugs. The body was removed at approximately 1:30 a.m., and the officers were accompanied to the police station by defendant who was questioned after having been warned of his constitutional rights. Later, between 9 and 10 a.m. on the same day, the officers returned to the home to complete the investigation accompanied by defendant. He was present and consenting when the officers entered the home a second time. When they asked defendant's permission to enter, he offered no objection but entered with them. This was merely a resumption of the initial investigation at the scene of the crime with defendant's consent and participation. The necessity of a search warrant is not apparent. "It is generally held that the owner or occupant of premises, or the one in charge thereof, may consent to a search of such premises and such consent will render competent evidence thus obtained. Consent to the search dispenses with the necessity of a search warrant altogether." *State v. Moore, supra* (240 N.C. 749, 83 S.E. 2d 912), citing numerous authorities. See also *State v. Little*, 270 N.C. 234, 154 S.E. 2d 61; *State v. Hamilton*, 264 N.C. 277, 141 S.E. 2d 506; *Zap v. United States*, 328 U.S. 624, 90 L. ed. 1477, 66 S. Ct. 1277.

There is substantial evidence of all material elements of the offense. In the decision of the Court of Appeals, we find

No error.