STATE OF NORTH CAROLINA v. ENORRIS CLINTON EDWARDS

No. 7014SC248

(Filed 24 June 1970)

1. **Criminal Law § 166— abandonment of assignments of error**

   Assignments of error not brought forward and argued in the brief are deemed abandoned.

2. **Criminal Law § 84— admission of evidence obtained by search without warrant — failure to object — necessity for voir dire**

   The trial court did not err in failing to conduct a voir dire hearing to determine the admissibility of evidence obtained by an officer's search of defendant's house where defendant did not object either to testimony by the officer that defendant consented to the search or to the admission of evidence obtained as a result of the search.

3. **Criminal Law § 85— cross-examination of defendant — prior convictions**

   A defendant who takes the witness stand in his own behalf may be cross-examined by the State with respect to his past convictions of crimes, but the State is bound by his answers.

APPEAL from *Bowman, S.J.*, 8 December 1969 Criminal Session, DURHAM County Superior Court.

The defendant, Enorris Clinton Edwards, was charged in a valid bill of indictment with the felonious breaking and entering of the dwelling house of J. Cameron Coltharp, Jr.; larceny of a camera, watch, and certain other jewelry belonging to Mrs. Coltharp; and with the felonious receiving of the above personal property of Mrs. Coltharp.

The evidence showed that Mr. and Mrs. Coltharp lived in Durham, North Carolina, where Mr. Coltharp is a student in the divinity school at Duke University. On Saturday morning, 20 September 1969, Mr. Coltharp left Durham and came to Raleigh. His wife followed him to Raleigh later that day and they spent the night in Raleigh. Upon their return to their apartment on Sunday afternoon, Mrs. Coltharp discovered that two cameras and her jewelry were missing. Mrs. Coltharp was unable to find the kittens which she had left outside in the hall. She did find them inside the apartment. One kitten was in the bedroom where it had been shut up and the other three kittens were in another room at the opposite end of the hall.

On Sunday morning, 21 September 1969, Detective R. D. Ray, of the Durham Police Department, unaware of the Coltharp theft, went to the home of the defendant to search for some missing pocketbooks. Detective Ray requested and obtained from the defendant

permission to search the premises and told the defendant that he did not have a search warrant. At this time the detective saw a camera in the kitchen which the defendant said was his and which he said he had had for over a year. The detective saw some jewelry in the defendant's bedroom and was told by the defendant that the jewelry belonged to the defendant's wife and that it had been given to her by his mother and his wife's mother some months before. The detective left the defendant's home but returned later and told the defendant that a report had been received at the Police Department that some jewelry fitting the description of that found in the defendant's home had been reported stolen. Detective Ray asked the defendant if he would be willing for Mrs. Coltharp to inspect this jewelry and the defendant agreed to this. On this trip Detective Ray took possession of the camera and the jewelry.

The defendant took the stand and testified in his own behalf. He stated that Detective Ray visited him on Sunday, 21 September 1969, at about 11:00 A.M., and that he told him he did not have a search warrant but that he would like to search the house. The defendant testified that "he had nothing to hide and consented for the detective to search his house." The defendant denied having ever been in the Coltharp apartment and offered evidence of an alibi stating that he had been with his family on the night of the theft. The defendant, on cross-examination, admitted that he had been convicted of larceny on at least five prior occasions. The defendant's brother-in-law testified that he had committed the theft and that the defendant had had no part in it. He testified that he committed the theft on Friday night, 19 September 1969, at about 8:30 or 9:00; that he got the jewelry on Wednesday night and the cameras on Friday night; and that he got in the house by using a key he had found to the back door.

Mrs. Coltharp testified on rebuttal that she and her husband were home on Friday night from approximately 8:00 on and that there was nothing to indicate that anyone had been in their apartment while they were gone. She testified as to the location of the articles which were stolen, which location differed greatly from that described by the defendant's brother-in-law.

The jury found the defendant guilty of breaking, entering and larceny. From the prison sentence imposed, the defendant, through his court-appointed attorney, gave notice of appeal and requested that the court appoint an attorney to help him prepare and perfect his appeal to this Court. On 10 December 1969, an attorney was

appointed to assist the defendant and to represent him in his appeal to the Court of Appeals.

*Robert Morgan, Attorney General, and William B. Ray, Staff Attorney, for the State.*

*A. H. Borland for the defendant appellant.*

HEDRICK, J.

**[1]**  The record on appeal in the present case contains no exceptions to the proceedings in the court below. The record does contain two assignments of error; however, the defendant has failed to bring them forward and argue them in his brief; therefore, they are deemed abandoned. Rule 28, Rules of Practice in the Court of Appeals of North Carolina.

We have, however, considered the two points argued by the defendant in his brief even though they are not supported by formal assignments of error.

**[2]**  The defendant argues that the trial court committed reversible error in the present case when it failed to conduct a voir dire hearing *ex mero motu* to determine the admissibility of the evidence obtained as a result of the search of the defendant's house by the detective. The testimony at the trial disclosed that the defendant consented to the search of his house and offered no objection when asked if a search could be conducted.

In *State v. Virgil,* 276 N.C. 217, 172 S.E. 2d 28 (1970), the defendant complained that the officers searched his room and the interior of his automobile without a search warrant and without warning him of his constitutional rights. The evidence showed that the door to the defendant's room was open and that he told the officers they could go in and "help ourselves." The car was searched with his permission and he went so far as to unlock the car door for the officers and the trunk. The Court, quoting from *State v. Colson,* 274 N.C. 295, 163 S.E. 2d 376 (1968), said:

> " 'An individual may waive any provision of the Constitution intended for his benefit, including the immunity from unreasonable searches and seizures; and where such immunity has been waived and consent given to a search . . ., an individual cannot thereafter complain that his constitutional rights have been violated.' "

It was not necessary in this case that the trial judge conduct a

voir dire to determine the legality of this search. The witness testified that he searched with the permission of the defendant, and the defendant did not object to either the testimony of the witness, or to the admission into evidence of the property located and seized as a result of the search. The trial judge is not required under our system of criminal law to aid the defendant in his presentation of the defense. *State v. Morris,* 275 N.C. 50, 165 S.E. 2d 245 (1968). Since the defendant did not object to this testimony, the court was not required to conduct a voir dire.

[3] The defendant also contends that the court committed prejudicial error in allowing the solicitor to cross-examine the defendant about his prior convictions of larceny. This argument is without merit. It has long been the rule in North Carolina that a defendant that takes the witness stand in his own behalf may be cross-examined by the State with respect to his past convictions of crimes, but the State is bound by his answers. *State v. Brown,* 266 N.C. 55, 145 S.E. 2d 297 (1965). The questions propounded by the solicitor in the present case were within the bounds of the rules.

We have carefully examined the record on appeal and conclude that the defendant had a fair trial in the superior court free from prejudicial error.

No error.

BROCK and BRITT, JJ., concur.