STATE OF NORTH CAROLINA v. SIDNEY RICHARD BROWN

No. 126

(Filed 6 June 1975)

1. Criminal Law § 146— appeal from Court of Appeals to Supreme Court
   — substantial constitutional question

   An appellant seeking to appeal to the Supreme Court from a decision of the Court of Appeals as a matter of right on the ground that a substantial constitutional question is involved must allege and show the involvement of a real and substantial constitutional question which has not already been the subject of conclusive judicial determination, the mere mouthing of constitutional phrases like "due process of law" and "equal protection of the law" being insufficient to avoid a dismissal. G.S. 7A-30.

2. Constitutional Law § 30— speedy trial — 3½ month delay between arrest and trial

   Defendant was not denied his right to a speedy trial by the delay between the defendant's arrest on 25 March 1974 and defendant's trial on 8 July 1974 where counsel was appointed to represent defendant and moved that a court reporter be provided to record the preliminary hearing, three days after defendant's arrest the court denied this request but stated that a recording system would be available to record the preliminary hearing, another attorney was appointed to represent defendant, and defendant waived a preliminary hearing through his second court-appointed counsel on 13 May 1974.

3. Indictment and Warrant § 14— motion to quash — denial without hearing

   The trial court did not err in the denial of defendant's motion to quash the indictments without a hearing where the trial court denied the motion after having reviewed the motion to quash and the lengthy brief filed in support thereof.

4. Constitutional Law § 31— refusal to put defendant and witness in same cell

   Defendant was not denied the right to communicate with his witness by the denial of his request that they be put in the same jail cell so that they could confer about their "joint defense" where defendant's testimony at trial was upon the theory that he and the witness had no joint defense, the defendant contending he did not know the witness and had nothing to do with the witness's activities

at the time of the crimes, and there is nothing to indicate that defendant's counsel was limited in his opportunity to confer with defendant and the witness.

5. **Constitutional Law § 31— denial of court reporter at preliminary hearing — recording facilities available — waiver of hearing — witness now deceased**

There is no merit in defendant's contention that his constitutional rights were violated through the State's delay of the preliminary hearing and the denial of his request for a court reporter to record the testimony at such hearing so that defendant lost the opportunity to record the intended testimony of a witness, now deceased, absolving defendant of complicity in the crimes for which he was tried where the record shows that facilities were available for recording the testimony at a preliminary hearing, the record shows no effort by defendant or his counsel to expedite a preliminary hearing after the court, three days after defendant's arrest, ordered such hearing at "the earliest practicable time," no such hearing was held because defendant waived it, and nothing in the record shows that the State had any indication that the witness would have testified as defendant now says he would have done or that the State had any indication that the witness's early death was a probability.

APPEAL by defendant from the judgment of the Court of Appeals, reported in 25 N.C. App. 10, 212 S.E. 2d 187, finding no error on the defendant's appeal to it from *Thornburg, J.,* at the 8 July 1974 Session of CALDWELL.

Upon indictments, proper in form, consolidated for trial, the defendant was found guilty of felonious breaking or entering and of possession without lawful excuse of implements of housebreaking. The two charges were consolidated for judgment and the defendant was sentenced to 10 years in the State Prison.

The evidence for the State was to the following effect:

At 3 a.m. on 25 March 1974, the burglar alarm at the Sav-Mor Drugstore in Lenoir signalled the police station that the store had been entered. Within two minutes, two officers arrived at the store, the first going to the front door and second to the back door. The main portion of the store was lighted but a storage room at the back of the building which led to the back door was dark. There was a light outside the building over the back door.

The first officer, who went to the front door, found it had been pried open and observed the defendant and two other men inside the store. When these three men saw this officer, they all ducked down behind a counter and went into the dark,

State v. Brown

back room. The officer followed them into that room and heard them removing a bar which was across the back door. When the door was thus opened, this officer could see by the light from the outside that the defendant and one of the other men were at the back door. The second officer, on the outside of the building, was only six or seven feet from the back door when it opened. The defendant stuck his head out, looked right into the face of the officer, pulled back into the building and closed the door, following which the door again opened and the other man ran out and, though wounded by shots fired by that officer, escaped. The defendant ran back into a corner of the dark storage room where the officer, who had entered the store by the front door, located him with the officer's flashlight and placed him under arrest.

The locked cabinet in which the store's stock of narcotic drugs was kept had been pried open and a quantity of various types of such drugs, together with a number of containers of jewelry, was piled on the counter within arm's reach of the defendant. Also, on the counter at that place, the officer found two crowbars which, without objection, he testified were used to gain entrance into the store. The crowbars were introduced in evidence. The man who fled from the store, when shot, dropped a bag containing a drill, bit, screwdriver and hammer, all of which were introduced in evidence.

After the defendant was arrested, the officers continued to search the store for the third man, Gibson, and found him hiding under the counter on which the drugs and crowbars had been found. Gibson, when found and arrested, had a pair of gloves in the pocket of his jacket. These were introduced in evidence. When found under the counter, Gibson also had a bottle of demerol pills, some of which he had taken. Demerol is a stimulant which drug addicts use. Some time after his arrest, while in custody awaiting trial, Gibson died.

The officer, who entered the building through the front door and who arrested the defendant, knew and recognized the defendant when he saw him. When this officer entered the store, the three intruders were two or three feet apart and were behind the drug counter. No drugs or tools were found on the defendant's person.

The president of the corporate owner of the store testified that he closed the store at 6:15 p.m. on the evening preceding

State v. Brown

the arrest of the defendant in the store. When he left the store, both the front and back doors were locked, the back door having a bar across it. The narcotic drugs were then in a locked compartment. There were no such drugs and no crowbars then on the counter. When he returned to the store, in response to a call from the officers, at approximately 4 a.m., the narcotics cabinet had been broken open and there were eight or ten bottles of narcotic drugs piled on the counter, in addition to the one which Gibson had beneath the counter and from which Gibson was taking pills.

The defendant testified in his own behalf to the following effect:

His home is in Bessemer City. On the night in question, he was returning home from California, hitchhiking. His last ride ended at Lenoir. He then walked along the highway and came to the Sav-Mor Drugstore which was lighted and in which he saw a man. Thinking the store was open, he went into it to buy a pack of cigarettes. Just as he entered the front door, the officer came in behind him with his pistol drawn, ordered him to get up against the wall and placed him under arrest, saying that the charge was "public drunkenness right now." He knew nothing about the narcotics piled on the counter in the back room and had nothing to do with opening the narcotics cabinet or taking the drugs therefrom. He did not force open the front door to the store and, prior to his arrest, knew nothing about the burglary tools. He has never used narcotic drugs. He did not try to hide when the officer came into the store.

Later, when Gibson was arrested, the two were placed briefly in the same holding cell. Gibson then told the defendant that he, Gibson, had been arrested for breaking and entering and possession of burglary tools and the officers would probably charge the defendant with those offenses. Gibson told the defendant he would testify that the defendant had nothing to do with the breaking and entering or with the possession of the burglary tools.

A few minutes later, the officers placed the defendant and Gibson in different parts of the jail and the defendant had no further conversation with Gibson. The officers took them to court together and they asked for a hearing. No date for a hearing was set and Gibson "killed himself or something in the jail." (The police officers who were witnesses for the State testi-

fied that Gibson died in jail but they had no information that he committed suicide.)

On cross-examination, the defendant testified that he did not know Gibson prior to that night, that he had been drinking and that he had previously served three prison sentences and had been convicted several times for assault with a deadly weapon, escape, larceny and traffic violations.

The arresing officer testified in rebuttal that he did not arrest the defendant for public drunkenness, that he found the defendant hiding in the storage room and that the defendant, when arrested, did not tell him that he just happened to be in the store for the purpose of getting a pack of cigarettes.

*Rufus L. Edmisten, Attorney General, and T. Buie Costen, Assistant Attorney General, for the State.*

*L. H. Wall for defendant.*

LAKE, Justice.

The conflict between the testimony of the police officers and that of the defendant raised a question of fact for the jury. The jury simply did not believe the defendant's unlikely explanation of his presence in the store along with two drug thieves.

[1] The decision of the Court of Appeals being unanimous, the defendant's only right to appeal to this Court, as distinguished from a petition for certiorari, is upon the basis of a substantial constitutional question. G.S. 7A-30. He asserts his constitutional rights have been denied, but his assignments of error raise no substantial constitutional question. "[A]n appellant seeking a second review by the Supreme Court as a matter of right on the ground that a substantial constitutional question is involved must *allege and show* the involvement of such question or suffer dismissal. The question must be real and substantial rather than superficial and frivolous. It must be a constitutional question which has not already been the subject of conclusive judicial determination. Mere mouthing of constitutional phrases like 'due process of law' and 'equal protection of the law' will not avoid dismissal." *State v. Colson,* 274 N.C. 295, 305, 163 S.E. 2d 376, cert. den., 393 U.S. 1087, 89 S.Ct. 876, 21 L.Ed. 2d 780. (Emphasis added.)

The defendant contends that he was denied his constitutional rights in the following respects: (1) He was denied his right to a speedy trial; (2) in denying his pretrial motions to quash the indictments, the trial court denied him the right "to present a defense"; and (3) the prosecution procedures employed were "so fundamentally unfair and basically unjust that they operated to forever deprive the defendant of his Sixth and Fourteenth Amendments Rights to a fair and impartial speedy trial."

[2] The offenses are alleged to have been committed on 25 March 1974. The defendant was brought to trial at the 8 July 1974 Session of the Superior Court. In the meantime, counsel was appointed to represent him. His counsel so appointed moved in the District Court that a court reporter be appointed at the State's expense to record proceedings at the preliminary hearing. This request was denied, but the court stated that the recording system which was used in the Juvenile Domestic & Relations Court would be available to record the preliminary hearing and ordered such hearing to be set at the earliest practicable time. This order was entered 28 March 1974, three days after the defendant's arrest. The defendant becoming dissatisfied with his court-appointed counsel and requesting appointment of another attorney, this was done, the second attorney representing him from that time to the present. Through his second court-appointed counsel, the defendant waived a preliminary hearing on 13 May 1974. There is no showing whatever of a denial of the defendant's right to a speedy trial.

[3] Prior to trial the defendant filed, pro se, a motion to quash the indictments. His court-appointed counsel filed a lengthy brief in support thereof. When the cases were called for trial in the Superior Court, the trial judge announced that he had previously considered and "thoroughly reviewed" the motion to quash and the supporting brief and the motion was denied. The defendant now asserts that it was a denial of his constitutional right to so rule upon his motion to quash "without hearing." There is no substance to this contention.

[4] The defendant contends he was denied the right to communicate with his witness Gibson by the denial of his request that they be put in the same jail cell so that they could confer about their "joint defense." Defendant's testimony at his trial was upon the theory that he and Gibson had no joint defense,

the defendant contending that he did not know Gibson and had nothing to do with Gibson's activities in the store. Furthermore, there is nothing whatever to indicate that either of defendant's court-appointed attorneys was limited in any respect in his opportunity to confer with the defendant and with Gibson.

[5]    Finally, the defendant asserts that, through the State's delay of the preliminary hearing and the denial of his request for a court reporter to take such testimony at such hearing, the defendant lost the opportunity to record Gibson's intended testimony absolving the defendant from complicity in the breaking and entering of the store and possession of the burglary tools. He contends that Gibson committed suicide and the State, through its negligence, failed to prevent this. The record shows that had a preliminary hearing been held, facilities were available for the recording of the testimony. The record shows no effort by the defendant or his counsel to expedite a preliminary hearing after the District Court, three days after the defendant's arrest, ordered such hearing to be held at the "earliest practicable time." No such hearing was held because the defendant waived it.

Nothing in the record indicates any effort by the defendant or his counsel to take the deposition of Gibson for the purpose of preserving his testimony. Furthermore, nothing in the record shows that the State had any indication that Gibson would testify as the defendant now says he would have done, nor does the record show that the State had any indication that Gibson's early death was a probability. The record does not show when Gibson died nor does it show anything about the cause of his death except the defendant's own testimony at his trial that Gibson "killed himself or something in the jail."

Nothing whatever in this record indicates that the defendant has not had a fair trial or that any of his rights under the State or Federal Constitution has been denied him. In addition to the above contentions of the defendant on this appeal, we have examined the rulings of the trial court concerning the admission of evidence and the charge of the court to the jury. We find therein no substantial error.

Appeal dismissed.